NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 25, 2013[*]
Decided October 25, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-1112

| | |
|---|---|
| LARRY M. BANKS, <br> *Plaintiff–Appellant,* <br><br> *v.* <br><br> HECTOR M. FUENTES and <br> IVAN R. LOPEZ, <br> *Defendants–Appellees.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 07 C 784 <br><br> Gary S. Feinerman, <br> *Judge.* |

**O R D E R**

In October 2006 two Chicago police officers stopped a car operated by Larry Banks after he allegedly drove left of the center line. Upon checking his name in their computer system, the officers learned that an investigative alert had been issued a few

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

days earlier when a shooting victim identified Banks as the assailant. The alert stated that there was probable cause to arrest Banks, and the officers took him into custody. He was ticketed for several driving offenses, including having no insurance, failing to produce a valid license, and driving left of center. He also was charged that same day with attempted murder and aggravated assault arising from the shooting described in the investigative alert. The driving-related charges were dismissed by way of a *nolle prosequi*, but Banks was convicted of aggravated battery and sentenced to eight years' imprisonment.

Banks filed this suit in 2007, and his original complaint and several early amendments encompassed other defendants and claims. By August 2010, however, he had narrowed the action to include only claims against the arresting officers under 42 U.S.C. § 1983 for what he characterized as "unlawful restraint and unlawful arrest." The district court understood Banks to be asserting that the officers had no justification to stop his car or to take him into custody. On the defendants' motion, the court dismissed the arrest claim because in his complaint Banks had conceded that he was unable to produce a valid driver's license after he was stopped; that meant, the court reasoned, that the officers had probable cause to take him into custody. *See* 625 ILL. COMP. STAT. 5/6-112 (2006); *Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 474 (7th Cir. 1997). Yet the stop itself, the court continued, was based on the officers' assertion that Banks had been driving left of center, which Banks denied in his complaint. Apparently the validity of the stop had not been litigated in the criminal case, and the district court concluded that the question was material and precluded dismissal of Banks's claim about the stop itself. That claim later was resolved against Banks at summary judgment because, the court reasoned, he had not disputed the officers' evidence that he crossed the center line.

Banks has appealed, but we have difficulty parsing an argument from his brief. Mostly he repeats the allegations from his complaint and copies verbatim into his brief the text of the district court's order granting summary judgment for the officers. As best we can tell, Banks asserts that the district court failed to consider all of his evidence, including the complete transcript of his deposition. Had the court done so, Banks insists, the court would have concluded that the officers stopped him unlawfully.

Banks is mistaken in thinking that the district court was obligated to read the entire deposition, but even so, we are skeptical of the court's conclusion that Banks effectively admitted crossing the center line. At summary judgment the defendants submitted a statement of material facts asserting in ¶ 9 that they had observed Banks

cross the center line before they signaled with their lights for him to stop. Local Rule 56.1 for the Northern District of Illinois requires a party moving for summary judgment to include in its statement of material facts specific references to supporting materials. N.D. ILL. L.R. 56.1(a)(3). In turn, the opposing party must highlight any disputes with the moving party's statement by making specific reference to affidavits or other supporting materials. N.D. ILL. L.R. 56.1(b)(3). The district court concluded that Banks had not disputed the defendants' ¶ 9 because while in the corresponding ¶ 9 of his opposition Banks denies crossing the center line, he cites as evidence the entire transcript of his deposition, which is not permissible. *See Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817–18 (7th Cir. 2004) (explaining that "[c]itations to an entire transcript of a deposition or to a lengthy exhibit" do not comply with Local Rule 56.1). Yet further into his opposition, in ¶ 18, Banks again denies that he crossed the center line and this time cites three pages from his deposition transcript. Those pages confirm that Banks unequivocally denied straying over the center line before the two officers stopped him. The district judge apparently overlooked ¶ 18, and in this court the defendants fail even to acknowledge it and thus never explain why that paragraph was not enough to comply with the local rule. It appears, therefore, that a dispute exists about whether the officers actually witnessed Banks's car cross the center line.

But is this dispute material? The district court reasoned that it matters whether the defendants observed a traffic offense because they did not know until after stopping Banks that he could not produce a driver's license and did not have insurance. The court cited our decision in *Carmichael v. Village of Palatine*, 605 F.3d 451 (7th Cir. 2010), for the proposition that the validity of a traffic stop turns on what the police knew before executing the stop. Although it is true that the defendants personally were unaware of the investigative alert before they stopped Banks, the fact remains that the alert already had been issued based on a determination of probable cause. Banks has not asserted that the alert was issued without probable cause, and what was known to other Chicago police officers was, under the doctrine of collective knowledge, deemed to be known by the defendants. *See United States v. Hensley*, 469 U.S. 221, 232–35 (1985); *United States v. Harris*, 585 F.3d 394, 400–01 (7th Cir. 2009); *United States v. Sawyer*, 224 F.3d 675, 680 (7th Cir. 2000); *Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998). Police officers may stop a vehicle based on a bulletin alone, *Hensley*, 469 U.S. at 232; *United States v. Groves*, 559 F.3d 637, 639, 641 (7th Cir. 2009); *United States v. Nafzger*, 974 F.2d 906, 910–11 (7th Cir. 1992), and in hindsight it does not matter that the defendants were ignorant of the investigative alert. After *Carmichael* was decided, we concluded that a passenger in a car stopped without probable cause had no basis to complain because the police, it turned out, had a warrant for his arrest. *Atkins v. City of*

*Chicago*, 631 F.3d 823, 826 (7th Cir. 2011). We noted in that decision that if the police were to stop cars randomly, "the drivers and passengers not named in warrants would have good Fourth Amendment claims," but someone with an outstanding warrant "has no right to be at large, and so suffers no infringement of his rights when he is apprehended." *Id.* at 827. Like a warrant, the investigative alert authorized Banks's arrest because other officers already had made a determination of probable cause. *See Sawyer*, 224 F.3d at 680; *Nafzger*, 974 F.2d at 912–13; *United States v. Longmire*, 761 F.2d 411, 415–16 (7th Cir. 1985). Thus, there was no infringement of Banks's rights when the officers stopped him and took him into custody, even if they were mistaken in believing that his vehicle had crossed the center line. Accordingly, the dispute about whether his car was observed crossing the center line is immaterial.

AFFIRMED.